1  SEAN K. KENNEDY (No. 145632)
   Acting Federal Public Defender
2  (Sean_Kennedy@fd.org)
   MICHAEL V SCHAFLER (No. 212164)
3  Deputy Federal Public Defender
   (Michael_Schafler@fd.org)
4  321 East 2nd Street
   Los Angeles, California 90012
5  Telephone (213) 894-5186
   Facsimile (213) 894-0081
6
7  Attorneys for Defendant
   TRAVIS MOCK
8
9                    UNITED STATES DISTRICT COURT
10                  CENTRAL DISTRICT OF CALIFORNIA
11                          WESTERN DIVISION
12
13  UNITED STATES OF AMERICA,        )   CASE NO. CR 06-123-RGK
14                   Plaintiff,      )   DEFENDANT'S POSITION RE:
                                     )   SENTENCING FACTORS;
15           v.                      )   EXHIBITS
                                     )
16  TRAVIS MOCK,                     )   Date: January 8, 2007
                                     )   Time: 1:30 P.M.
17                   Defendant.      )   Place: Courtroom 850 -- Roybal
                                     )
18                                   )
19  _____)
20
21
22
23
24
25
26
27
28

1

## **TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    OBJECTIONS TO THE PRESENTENCE REPORT . . . . . . . . . . . . . . . . . . . . . . . . 3

III.   APPROPRIATE SENTENCE UNDER 18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . 4

       A.     THE LIMITED WEIGHT TO BE GIVEN
              THE SENTENCING GUIDELINES
              AFTER *BOOKER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       B.     THE NATURE AND CIRCUMSTANCES
              OF THE OFFENSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       C.     MR. MOCK'S HISTORY AND CIRCUMSTANCES . . . . . . . . . . . . . . . . . . . 9

       D.     THE NEED FOR TREATMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IV.    OBJECTION TO IMPOSITION OF ANY
       SPECIAL CONDITIONS OF SUPERVISED
       RELEASE WITHOUT PRIOR NOTICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

V.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

i

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                    **PAGES**

*Custis v. United States,*
    511 U.S. 485 (1994) ................................................................ 4

*United States v. Ameline,*
    409 F.3d 1073 (9th Cir. 2005) ............................................... 5

*United States v. Booker,*
    543 U.S. 220 (2005) ........................................................ 2, 4, 5

*United States v. Diaz-Argueta,*
    447 F.3d 1167 (9th Cir. 2006) ............................................... 5

*United States v. Wise,*
    391 F.3d 1027 (9th Cir. 2004) ............................................. 13


**FEDERAL STATUTES**

18 U.S.C.
    § 1029(a)(3) ........................................................................ 1
    § 3553(a) ................................................................... *passim*


**UNITED STATES SENTENCING GUIDELINES**

    § 2B1.1, comment., n. 3(F)(I) ............................................... 2
    App. C, Amend. 596 ............................................................. 7

1  SEAN K. KENNEDY (No. 145632)
   Acting Federal Public Defender
2  (Sean_Kennedy@fd.org)
   MICHAEL V SCHAFLER (No. 212164)
3  Deputy Federal Public Defender
   (Michael_Schafler@fd.org)
4  321 East 2nd Street
   Los Angeles, California 90012
5  Telephone (213) 894-5186
   Facsimile (213) 894-0081
6
7  Attorneys for Defendant
   TRAVIS MOCK
8
9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                 WESTERN DIVISION

12

13  UNITED STATES OF AMERICA,          )  CASE NO. CR 06-123-RGK
                                        )
14              Plaintiff,              )  DEFENDANT'S POSITION RE:
                                        )  SENTENCING FACTORS;
15        v.                            )  EXHIBITS
                                        )
16                                      )  Date: January 8, 2007
    TRAVIS MOCK,                        )  Time: 1:30 P.M.
17                                      )  Place: Courtroom 850 -- Roybal
                Defendant.              )
18                                      )
19  _____     )

20                        I.

21            **PRELIMINARY STATEMENT**

22

23       On October 5, 2006, defendant Travis Mock pleaded guilty, pursuant to a plea

24  agreement, to a single-count indictment charging him with possessing fifteen or more

25  unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3).  More

26  specifically, Mr. Mock admitted that he obtained -- *but never used* -- 66 credit card

27  numbers from Marriott Hotel time-share forms.  The parties agreed that, under the

28

1   applicable sentencing guidelines, the loss, which is based entirely upon the $500 per

2   access device presumptive loss established by the sentencing guidelines, was

3   between $30,000 and $70,000.  U.S.S.G. § 2B1.1, comment., n. 3(F)(I).  However,

4   since Mr. Mock did not actually use any of the credit card account numbers, he did

5   not cause any *actual* loss.  (PSR ¶ 14.)

6

7        This Court referred the matter to the probation office for preparation of a

8   presentence report, and that report, excluding the confidential recommendation, was

9   timely disclosed to the parties.  In its report, the probation office recommends that

10  this Court find (1) that the total offense level is **10**, (2) that Mr. Mock has **11** criminal

11  history points and thus falls within a criminal history category **V**, and (3) that the

12  sentencing range is **21-27** months.  Pursuant to the plea agreement, the government

13  recommends that Mr. Mock be sentenced at the low end of the guideline range, which

14  is **21** months.  Mr. Mock does not have any objections to the presentence report's

15  sentencing guidelines calculations.

16

17       Mr. Mock submits this Position Re: Presentence Report to assist this Court in

18  imposing a sentence that is "sufficient but not greater than necessary" to achieve the

19  statutory purposes of punishment, as required by 18 U.S.C. § 3553(a) in light of

20  *United States v. Booker*, 543 U.S. 220 (2005).  *Booker* restored sentencing courts'

21  ability to fashion a sentence tailored to the individual circumstances of the case and

22  defendant by requiring courts to consider factors other than the sentencing range

23  prescribed by the Sentencing Guidelines.  Under Section 3553(a), courts are actually

24  *required* to sentence below the range if such a sentence would be sufficient to

25  achieve the purposes of punishment.

26

27       Here, pursuant to 18 U.S.C. § 3553, the Court should impose a sentence below

28  the guideline range.  Mr. Mock respectfully requests that this Court consider several

1  important circumstances of this offense and of his life (§ 3553(a)(1)), his genuine

2  need for treatment for his recurring drug addiction (§ 3553(a)(2)(D)), and the kinds

3  of sentences available (§ 3553(a)(3)), and in doing so submits that this Court should

4  conclude that a split sentence of nine months in custody and six months in an

5  approved residential drug treatment facility is an appropriate, but not greater than

6  necessary, punishment.

7

8       Mr. Mock is only 22 years old.  His conduct was unsophisticated and

9  sophomoric.  In fact, his background and the circumstances of this offense indicate

10  that he is not a hardened criminal, but rather that he is a drug addict.  Sadly, despite

11  the numerous opportunities to diagnose and treat his addiction, prior to being arrested

12  for the instant offense, he has never received any drug treatment or education.  But

13  Mr. Mock has shown the potential to turn himself around: he has managed to stay

14  clean for long periods of time as evidenced by the fact that he discharged his state

15  parole after 13 months (which included consistent drug testing).  And that track

16  record indicates that, with intensive residential treatment and the benefits of federal

17  supervision, Mr. Mock can beat his addiction and set himself on the proper path.

18

19  **II.**

20  **OBJECTIONS TO THE PRESENTENCE REPORT**

21

22      1.  <u>Paragraphs 7(c) and 66</u>:  Mr. Mock objects to the inclusion in the

23  presentence report of characterization that he is a member of the "Insane White Boys

24  (IWB) gang."  There is no reliable evidence that Mr. Mock is a gang member.  The

25  source of that information is the confidential informant (CI).  However, the CI's

26  information is demonstrably unreliable.  Not only did the CI provide that information

27  after being arrested for his own drug use and passing of counterfeit currency, but also

28  the CI proved himself to possess more inaccurate information (*i.e.*, Mr. Mock

3

1  possessed thousands of profiles, sophisticated computer equipment, and sold drugs
2  from his apartment) than accurate information. Therefore, his uncorroborated
3  accusation should be ordered stricken from the report. It is particularly important
4  that this allegation be stricken because a presentence report follows a defendant
5  around for all subsequent federal law enforcement contacts and could put his safety
6  and security in jeopardy in federal custody.

7

8      2. <u>Paragraphs 36-38</u>: It does not appear that Mr. Mock was represented by
9  counsel in the court proceedings that led to the juvenile conviction described in these
10  paragraphs. Waivers in quick California court proceedings – such as the proceeding
11  in this case appears to have been – frequently fall short of the constitutional standards
12  for a valid waiver of the right to counsel, so this conviction may be subject to attack.
13  *See Custis v. United States*, 511 U.S. 485, 496 (1994) (recognizing right to
14  collaterally attack conviction used to enhance sentence based on denial of right to
15  counsel but declining to extend to other constitutional challenges). Defense counsel
16  has reviewed the pertinent records retrieved by the United States Probation Office
17  and they do not establish that Mr. Mock was represented by counsel.

18

19                                  **III.**

20        **APPROPRIATE SENTENCE UNDER 18 U.S.C. § 3553(a)**

21

22    A.    THE LIMITED WEIGHT TO BE GIVEN THE SENTENCING
23          GUIDELINES AFTER *BOOKER*

24

25      No court now needs to be reminded that *United States v. Booker*, 543 U.S. 220
26  (2005) made the sentencing guidelines advisory rather than mandatory. The effect of
27  these holdings on sentencing was explained by Justice Breyer in his opinion for the
28  Supreme Court on this issue:

1        Without the "mandatory" provision, the [Sentencing Reform] Act

2        nonetheless requires judges to take account of the Guidelines

3        together with other sentencing goals. *See* 18 U.S.C.A. § 3553(a)

4        (Supp. 2004). The Act nonetheless requires judges to consider the

5        Guidelines "sentencing range established for . . . the applicable category

6        of offense committed by the applicable category of defendant," §

7        3553(a)(4), the pertinent Sentencing Commission policy statements, the

8        need to avoid unwarranted sentencing disparities, and the need to

9        provide restitution to victims, §§ 3553(a)(1), (3), (5)-(7) (main ed. and

10       Supp. 2004). And the Act nonetheless requires judges to impose

11       sentences that reflect the seriousness of the offense, promote respect for

12       the law, provide just punishment, afford adequate deterrence, protect the

13       public, and effectively provide the defendant with needed educational or

14       vocational training and medical care. § 3553(a)(2) (main ed. and Supp.

15       2004).

16

17   *Booker*, 543 U.S. at 259-60. As Judge Wardlaw noted in her opinion in *United States*

18   *v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (en banc): "*Booker*'s profound impact on

19   federal sentencing" is that it "restor[es] the discretion to the sentencing court that the

20   mandatory guidelines had stripped away." *Ameline*, 409 F.3d at 1099 (Wardlaw, J.,

21   concurring in part and dissenting in part). And "[t]here is no presumption that [the

22   advisory guideline range] has taken into account all of the relevant circumstances

23   that the statute states that the court 'shall consider.'" *United States v. Diaz-Argueta*,

24   447 F.3d 1167, 1171 (9th Cir. 2006). "Indeed, district courts may even consider

25   factors that were precluded from consideration altogether prior to *Booker*," and "have

26   the discretion to weigh a multitude of mitigating and aggravating factors that existed

27   at the time of mandatory Guidelines sentencing, but were deemed 'not ordinarily

28   relevant.'" *Ameline*, 409 F.3d at 1093 (Wardlaw, J., concurring in part and dissenting

1  in part).

2

3       B.    THE NATURE AND CIRCUMSTANCES OF THE OFFENSE

4

5       Mr. Mock has accepted responsibility for possessing, without authorization

6  and with the intent to defraud, more than 15 access devices.  Specifically, Mr. Mock

7  admitted -- both in a statement to law enforcement prior to his arrest and in the

8  resulting plea agreement -- that he obtained 66 separate documents related to a

9  Marriott Hotel time-share promotion.  Each such document contained a credit card

10  number.  The parties stipulated that, for the purposes of the sentencing guidelines, the

11  loss was between $30,000 and $70,000 (66 x $500 = $33,000).  That stipulated loss

12  amount was based on United States Sentencing Guideline 2B1.1, Application Note

13  3(F)(i), which provides that loss includes any unauthorized charges "and shall not be

14  less than $500 per access device."  The defense agrees that, under the guidelines, the

15  stipulated loss range is correct when applied to these facts.

16

17       But after *Booker*, a sentencing court must of course do more than merely

18  consider the sentencing guidelines:  it must also consider the (1) nature and

19  circumstances of the offense and (2) the need for the punishment to reflect the

20  seriousness of the offense.  18 U.S.C. § 3553(a)(1), (a)(2)(A).  Therefore, like the rest

21  of the sentencing guidelines the imposition of the $500 per account number minimum

22  is only advisory.

23

24       Upon consideration of the lack of sophistication involved in this offense and

25  the underlying rationale for the $500 per account number presumptive loss this Court

26  should use its discretion under *Booker* to impose a sentence below the guideline

27  range.  First, Mr. Mock did not use any of those credit card numbers and the

28  government agreed that there is *no actual loss* attributable to Mr. Mock's possession

1   of those account numbers.  In fact, Mr. Mock did not use those account numbers

2   because, as he told the arresting agents, he did not believe that he could.  In other

3   words, he did not know how to use the account numbers.  More specifically, although

4   Mr. Mock had the account numbers and expiration dates, he did not have the

5   additional security numbers that are required in many (if not most) transactions these

6   days.  It is unlikely that he actually needed those additional security numbers.  But

7   because he thought he did, he never used the account numbers.

8

9       Moreover, Mr. Mock was in possession of the numbers for (at least) several

10  weeks.  Yet, he did not use any of them.  While it is sometimes the case that a

11  defendant does not cause harm because of good police work, that does not appear to

12  have been the case here.  Mr. Mock had the account numbers in his possession for

13  several weeks.  He could have easily tried to use one right away.[1]  The fact that he did

14  not only buttresses Mr. Mock statement that he did not know how to use the numbers.

15  This was utterly an unsophisticated defendant.  And for that reason, the applicable

16  guideline range overstates the seriousness of the offense.

17

18      The rationale underlying the imposition of the $500 per account number

19  minimum, however, appears to be focused primarily on *sophisticated* identity theft

20  and credit card schemes.  Amendment 596 to the Sentencing Guidelines, which added

21  the $500 minimum to the sentencing guidelines in November 2000, specifically notes

22  that identity theft crimes occur "along a continuum of offense conduct.  The most

23  basic type of identity theft occurs when a thief steals a wallet and uses a stolen credit

24  card to make a purchase or forges a signature to cash a stolen check."  U.S.S.G., App.

25  C, Amend. 596.  Here, Mr. Mock's conduct is even less sophisticated than the "most

26  basic type[s]" discussed above.  Mr. Mock was not able to use any of the account

27

28  [1]  It is often the case that a defendant who acquires a credit card account number of another
    will quickly make a small charge on the account to ensure that the number is valid and operable
    without raising suspicion.

7

1  numbers.

3  Amendment 596 goes on to state that, in the Sentencing Commission's view,
4  Congress was more concerned about "more aggravated and sophisticated forms of
5  identity theft" than those described above.  Therefore, the Sentencing Commission
6  amended the guideline to include the $500 minimum, among other amendments and
7  enhancements, to enhance the punishments of individuals who engage in "financial
8  and credit account take-overs," where the defendant engages in "affirmative activity
9  to generate or 'breed' another level of identification . . . ." *Id.*  The Sentencing
10  Commission noted that the credit take-over is more sophisticated because of the
11  "additional steps" that further "conceal and continue the fraudulent conduct."  *Id.*
12  According to the Sentencing Commission, the result to the victims are increased
13  monetary and non-monetary harm.  Accordingly, the Sentencing Commission
14  determined that "this aggravated offense conduct, in contrast to the most basic forms
15  of identity theft, merits enhanced punishment."  *Id.*

17  Here, a sentence within the guideline range, and thus a sentence based on the
18  $500 minimum, would overstate the seriousness of the offense.  Mr. Mock, who
19  caused *no actual loss*, would end up being punished like an individual who actually
20  caused a loss of up to $70,000.  That would overstate the seriousness of Mr. Mock's
21  conduct.

23  Using the discretion restored to this Court by *Booker* to impose a sentence
24  below the guideline range based on the $500 minimum is not unprecedented.
25  Although there is a dearth of reported cases addressing this issue, the defense is
26  aware of at least one recent case in which a district court decided to sentence based
27  on the actual loss rather than on the $500 per account number minimum.  In *United*
28  *States v. Mantizian*, CR 06-66-SJO, the Court sentenced the defendant based on the

8

1  actual loss of $130,215.15 rather than on the presumptive loss of $1,017,500.00,
2  which was derived from the $500 per account number minimum for each of the 2,035
3  account numbers.  To properly reflect the seriousness of the offense, it would be
4  appropriate to do the same in this case.

5

6      C.    MR. MOCK'S HISTORY AND CIRCUMSTANCES

7

8      Travis Mock was born on February 3, 1984.  He is 22 years old.  Despite that,
9  he has already had several run-ins with the law.  A review of his background
10  provides several clues as to how he has found himself in trouble at such a young age.
11  More importantly, however,  his background also provides a solid basis to believe
12  that Mr. Mock can turn his life around.

13

14      During his childhood, Mr. Mock's immediate family consisted of his mother
15  and four brothers.  The presentence report notes that Mr. Mock's father was "not in
16  the picture."  In fact, Mr. Mock's father did not play a positive role in Mr. Mock's
17  upbringing.  His father spent virtually all of Mr. Mock's childhood addicted to drugs
18  (methamphetamine) and in-and-out of jail.

19

20      As a relatively young man, it is difficult for Mr. Mock to appreciate how this
21  has impacted him.  But it is nonetheless clear that it has.  Mr. Mock began to find
22  himself in trouble soon after his father re-entered his life.  By age 16 or 17, Mr. Mock
23  had dropped out of high school, begun experimenting with drugs, and working with
24  his father.  Although Mr. Mock sees his mother as a positive, stabilizing force in his
25  life, she had already moved out of state when she remarried.  Accordingly, Mr.
26  Mock's primary role-model and provider of emotional support became his father.  It
27  is obvious, based not only on Mr. Mock's own criminal history, but also on the legal
28  troubles of his two older brothers, that Mr. Mock's father failed to teach his children

1  to learn from his mistakes.  This is especially true with respect to use of

2  methamphetamine.

3

4       Although Mr. Mock has made bad decisions -- virtually all of which involve

5  his use of methamphetamine -- he has also shown the potential to live a positive and

6  productive life.  As his mother pointed out, Mr. Mock has never had anything given

7  to him.  Rather, the little that he has (*i.e.*, his own apartment and automobile) he has

8  had to earn.  But maybe the most important thing he has earned is his experience and

9  knowledge as a glazier.  Those skills will almost certainly provide Mr. Mock with

10 some financial security in the future.

11

12      Mr. Mock has also shown the potential to beat his drug addiction.  Although he

13 has never received drug abuse treatment or education (until being arrested in this

14 case), Mr. Mock was able to discharge his state probation in 13 months without

15 failing any drug tests or picking up any new criminal conduct.  And since being

16 arrested in this case, Mr. Mock has demonstrated his determination to beat his

17 addiction.[2]  He is taking a course entitled "Positive Life Attitudes," which is a

18 substance abuse prevention course.  His professor indicates that

19

20            Mr. Mock is a good student, participates extremely well in

21            class and displays a positive attitude.  He appears motivated

22            to learn and has been provided with valuable information,

23            including coping skills that will benefit him in the future.

24

25 (*See* Exhibit A.)  Another professor of his, for a class entitled "Positive Life

26 Attitudes/Breaking Barriers" stated that

27

28 ───────────
   [2]  When Mr. Mock made his initial appearance, the government agreed to a pre-trial release
   to allow Mr. Mock to immediately commence drug abuse treatment.  However, because of a dearth
   of other bail resources, Mr. Mock was not granted a pre-trial release.

10

1          Mr. Mock has a positive attitude in class, and his attendance

2          record has been excellent.  It is hoped the court will give

3          serious consideration to Mr. Mock's positive efforts when

4          making its decision regarding the disposition of his case.

5

6   (*See* Exhibit B.)

7

8       This makes Mr. Mock's case not one of hopelessness, but more a case of

9   whether the glass is half empty or half full, or a case of two steps forward, one step

10  back.  On the one hand, he has previously reverted to drug use and criminal activity.

11  But on the other hand, he successfully discharged from parole after 13 months of

12  drug testing and stayed clean that entire time.  Moreover, since going into custody in

13  this case, he has taken great interest in his drug abuse courses.  Considering the fact

14  that he has never before had the opportunity to receive meaningful drug treatment,

15  Mr. Mock appears ready to overcome his addiction.

16

17  D.    THE NEED FOR TREATMENT

18

19       In his presentence interview, Mr. Mock candidly told the United States

20  Probation Officer that he "believes that his methamphetamine use has become a

21  problem and has negatively affected his life." (PSR ¶ 75.) It obviously has.  He has

22  tried to break his dependence on methamphetamine, but has always resumed his drug

23  use. (*Id.* at ¶ 72.) Despite that and despite his prior convictions for

24  methamphetamine-related offenses, Mr. Mock has never been offered any formal

25  drug abuse treatment.[3]

26

27

28     [3]  While Mr. Mock was in state custody he participated in a Narcotics Anonymous program. However, the program was not helpful as the other participants did not take it seriously and Mr. Mock did not have a sponsor.

11

1    Both the sentencing guidelines and § 3553(a) permit this Court to substitute

2  time in a drug treatment facility for time in custody.  Application Note 6 to

3  Sentencing Guideline § 5C1.1 provides that a substitution of a period in an approved

4  residential drug treatment program for an equal term of imprisonment can be

5  considered in cases in which "the defendant's criminality is related to the treatment

6  problem to be addressed and there is a reasonable likelihood that successful

7  completion of the treatment program will eliminate the problem."  Similarly, under §

8  3553(a) this Court is required to consider both the "kinds of sentences available" as

9  well as the need for the sentence to provide the defendant with "medical care or other

10  correctional treatment in the most effective manner."  18 U.S.C. § 3553(a).

11

12    Substituting treatment for a period of incarceration is appropriate here.  Mr.

13  Mock is only 22 years old.  It is not too late for him.  However, it is becoming clear

14  that he cannot beat his addiction on his own.  He has already had various contacts

15  with the state criminal justice system and yet has not received any necessary

16  treatment.  Moreover, the enthusiasm with which Mr. Mock has approached the

17  treatment options currently available to him suggests that his truly desires to receive

18  drug abuse treatment.

19  ///

20  ///

21  ///

22  ///

23

24

25

26

27

28

12

**IV.**

## OBJECTION TO IMPOSITION OF ANY SPECIAL CONDITIONS OF SUPERVISED RELEASE WITHOUT PRIOR NOTICE

Because the presentence report's recommended sentence is confidential, and because the recommendation of any special conditions of supervised release is contained within the probation officer's letter to the Court, Mr. Mock has not had an opportunity to read or respond to the probation officer's discussion of any special conditions of supervised release proposed to the Court in fashioning an appropriate sentence in this case. Therefore, the defense objects to the imposition of any special conditions of supervised release of which the defense has not been given notice. *See United States v. Wise*, 391 F.3d 1027 (9th Cir. 2004) (holding district court erred in imposing special condition of supervised release with no prior notice).

**V.**

## CONCLUSION

Based on the foregoing, Travis Mock respectfully requests that this Court impose a split sentence of nine months in custody and six months in an approved residential drug abuse treatment program. That is long enough to punish Mr. Mock and provide a serious consequence for his offense, but will give him the treatment he needs to avoid repeating his mistakes.

Respectfully submitted,

SEAN K. KENNEDY
Acting Federal Public Defender

DATED:  December 28, 2006          By

MICHAEL V SCHAFLER
Deputy Federal Public Defender

13

SCANNED



# S A N T A   A N A   C O L L E G E

1530 W. 17th Street · Santa Ana · CA 92706-3398 · (714)564-6000 · http://www.sac.edu

*A History of Success,*
*A Future of Promise*

Erlinda Martinez, Ed.D.
President

**Centennial Education Center**
2900 W. Edinger Ave.
Santa Ana, CA 92704-3902
(714) 241-5700

**Marketplace Education Center**
201 E. 4th St.
Santa Ana, CA 92701-4603
(714) 564-5760

**Regional Fire Training Center**
3405 W. Castor St.
Santa Ana, CA 92704-3909
(714) 564-6847

**Criminal Justice Academies**
1900 W. Katella Ave.
Orange, CA 92867-3419
(714) 628-5980

November, 2006

Subject:     Mock, Travis
DOB:         February 3, 1984

To whom this may concern,
On behalf of Mr. Travis Mock, it's my pleasure to write this letter which
confirms that he is presently enrolled in the Positive Life Attitudes,
Substance Abuse course. The three hour class meets every Friday
afternoon at the Santa Ana Jail facility. He began attending classes on
September 8, 2006 and has attended a total of eight classes.

Mr. Mock is a good student, participates extremely well in class and
displays a positive attitude. He appears motivated to learn and has been
provided with valuable information, including coping skills that will
benefit him in his future.

Respectfully,

Luis Martinez
Instructor

R A N C H O   S A N T I A G O   C O M M U N I T Y   C O L L E G E   D I S T R I C T
Board of Trustees: Alfredo M. Amezcua, J.D., R. David Chapel, Ed.D., Brian E. Conley, M.A., John R. Hanna, Lawrence R. Labrado, Lisa Woolery, Phillip E. Yarbrough, Edward Hernandez, Jr., Ed.D., Chancellor

SCANNED



# SANTA ANA COLLEGE

1530 W. 17th Street · Santa Ana · CA 92706-3398 · (714)564-6000 · http://www.sac.edu

*A History of Success,*
*A Future of Promise*

**Erlinda Martinez, Ed.D.**
President

**Centennial Education Center**
2900 W. Edinger Ave.
Santa Ana, CA 92704-3902
(714) 241-5700

**Marketplace Education Center**
201 E. 4th St.
Santa Ana, CA 92701-4603
(714) 564-5760

**Regional Fire Training Center**
3405 W. Castor St.
Santa Ana, CA 92704-3909
(714) 564-6847

**Criminal Justice Academies**
1900 W. Katella Ave.
Orange, CA 92867-3419
(714) 628-5980

November 1, 2006

From: Patricia Coyle
Santa Ana College
School of Continuing Education
Santa Ana, CA 92660

Subject:  Letter of recommendation

To Whom It May Concern,

I am pleased to write a letter of recommendation for Mr. Travis Mock. Mr. Mock is enrolled in the inmate education program at the Santa Ana City Jail, which is presented through the Santa Ana Community College School of Continuing Education.  Specifically, Mr. Mock has been attending the *Positive Life Attitude/BREAKING BARRIERS* classes.  To date he has completed 15 hours, and he is working toward a *CERTIFICATE OF PARTICIPATION* award from the program.

Mr. Mock has a positive attitude in class, and his attendance record has been excellent.   It is hoped the court will give serious consideration to Mr. Mock's positive efforts when making its decision regarding the disposition of his case.

Sincerely,

*Patricia Coyle*

Patricia Coyle
E. S. L. Instructor/Barriers Facilitator

RANCHO   SANTIAGO   COMMUNITY   COLLEGE   DISTRICT
Board of Trustees: Alfredo M. Amezcua, J.D., R. David Chapel, Ed.D., Brian E. Conley, M.A., John R. Hanna, Lawrence R. Labrado, Lisa Woolery, Phillip E. Yarbrough, Edward Hernandez, Jr., Ed.D., Chancellor

13 November 2006

To Whom It May Concern:
Re: Travis Mock

Travis Mock is currently in the education program at the Santa Ana Jail.
He is enrolled in Sociology 112, Portrait of a Family", through Santa Ana Community College, Santa Ana, California. He has maintained an A average and completed all course work ahead of schedule.
Mr. Mock has taken a great enterest in the course material and makes significant contributions to class discussion.

Michael K. Cooke
Instructor, Santa Ana College, Santa Ana, California
Santa Ana Jail Facility

## PROOF OF SERVICE

I, the undersigned, declare that I am a resident or employed in Los Angeles County, California; that my business address is the Office of the Federal Public Defender, 321 East 2nd Street, Los Angeles, California 90012-4202; that I am over the age of eighteen years; that I am not a party to the above-entitled action; that I am employed by the Federal Public Defender for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, and at whose direction I served the **DEFENDANT'S POSITION RE: SENTENCING FACTORS; EXHIBITS**

On December 28, 2006, following ordinary business practice, service was:

[X] Placed in a closed envelope, for collection and hand-delivery by our internal staff, addressed as follows:

[] By hand-delivery addressed as follows:

[] Placed in a sealed envelope for collection and mailing via United States Mail, addressed as follows:

[] By facsimile as follows:

ANNE VOIGTS
Assistant U.S. Attorney
U.S. Courthouse
312 No. Spring Street, 13th Fl.
Los Angeles, CA 90012

ALEXIS BERG, USPO
312 N. Spring St. 6th
Los Angeles, CA 90012

This proof of service is executed at Los Angeles, California, on December 28, 2006.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

MIRELA POPESCU

14